UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DEMETRIOUS DWAN JONES,

                          Petitioner,

    v.

UNITED STATES OF AMERICA,

                          Respondent.

**DECISION AND ORDER**
24-CV-1143-A
23-CR-70-A

Before this Court is Petitioner's *pro se* Motion to Vacate, Set Aside, or Correct the Sentence Under 28 U.S.C. §2255 ("§2255 Motion").  Dkt. 105.[1]  The Government has filed a Motion to Dismiss. Dkt. 124.  For the reasons which follow, Jones' motion is denied, and the Government's motion is granted.

## I.    FACTS:

    Briefly, on February 3, 2023, Jones and three others were charged in a criminal complaint with the following crimes: unlawfully possessing with intent to distribute 50 grams or more of a mixture or substance containing methamphetamine, and fentanyl, cocaine and cocaine base, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B);  conspiracy to possess with intent to distribute 50 grams or more of a mixture or substance containing methamphetamine, and fentanyl, cocaine and cocaine base, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(B); and possession of a firearm in furtherance of a drug

---

[1] References herein, unless otherwise indicated, are to documents filed on this Court's Docket in case 23-CR-70-A.

trafficking crime, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and (2).

Shortly after Jones' initial appearance on the complaint, attorney Anthony J. Lana, Esq. was assigned to represent him. 23-CR-70-A, *Dkt. Entry dated 2/8/23*. Within a week, attorney Lana filed a motion to withdraw from representing Jones. Dkt. 14. On February 22, 2023, attorney Lana was relieved from his assignment and attorney Brian K. Parker, Esq. was assigned to represent Jones. 23-CR-70-A, *Dkt. Entry dated 2/22/23*. Following several adjournment requests, a change of plea hearing was scheduled for August 4, 2023.

On August 4, 2023, defendant, accompanied by attorney Parker, appeared before this Court for a scheduled waiver of indictment and plea proceeding. Dkt. 60. At the outset of that proceeding, the following colloquy took place:

> MR. PARKER: Good morning, Your Honor…I did expect this plea to go forward this morning. Just -- the moment I sat down next to Mr. Jones, he informed me that he spoke with different counsel and that counsel, not me, advised him not to go forward with the plea. So, he's taking advice from somebody other than the attorney that's assigned to represent him.
>
> At this point, I would -- and I can formally file, but I would ask to be relieved as counsel. If my client is not going to take my advice, if he's got family lawyers or somebody else that he's going to take the advice of over me, I don't see the point in me continuing on this case.
>
> THE COURT: Do you have retained counsel?
>
> THE DEFENDANT: No.
>
> THE COURT: Who is this lawyer?
>
> THE DEFENDANT: Your Honor, it's somebody that came to see another inmate.

MR. PARKER: Robert Fogg.

THE COURT: Who is it?

MR. PARKER: Robert Fogg.

THE COURT: I don't remember ever, in 35 years as a judge, that some other lawyer stuck his two cents into a situation like this to get -- advised his client contrary to what counsel was advising. Well, I'm not going to relieve you now, that's for sure. Mr. Jones, what do you want to do?

THE DEFENDANT: At the moment, Your Honor, I honestly don't know what I want to do, but I don't think this plea is --

THE COURT: Absolutely. This is a very important decision that you are making. I'm not going to try to rush you to take a plea. That's not my job. I can't even be involved in the plea. I'll tell you what we'll do. Why don't you have a conversation with Mr. Fogg, Mr. Parker? Let's put this off for a week, see where we are. I don't know what else to do. I could set a trial date. You're asking to be relieved. I'm not about to relieve you. He doesn't even have -- I don't know what Fogg's involvement in this is.

THE DEFENDANT: I asked him --

THE COURT: It's what?

THE DEFENDANT: I asked him something about it. He didn't directly come to me.

MR. COURT: How did you get Mr. Fogg?

THE DEFENDANT: He was coming to visit another inmate.

THE COURT: That even makes it more complex. You got jailhouse lawyers over there.

THE DEFENDANT: And they also told me that this plea didn't abide to me. And also, they explained to me that my due process rights have been violated.

THE COURT: All right. I'll tell you what we'll do. We'll come back here next, let's say, when is a good day, Wednesday, Thursday, Friday of next week?

(Dkt. 60, pp. 3-5).  After adjourning the appearance and directing the parties to appear on the following Wednesday for a status conference regarding the plea, *id.*, p. 7, the following discussion took place:

> THE COURT: And if Mr. Fogg -- obviously I'm – if Mr. Fogg wants to be here, fine. If he's not, this matter is not resolved, the matter will be adjourned, and you can present it to a Grand Jury, and we'll go from there.
>
> [AUSA] COOPER: Thank you, Your Honor.
>
> THE COURT: All right. Understand, Mr. Parker?
>
> MR. PARKER: Understood. Thank you.
>
> THE COURT: Make sure Mr. Jones understands that. I'm not putting any pressure on him at all. If he does what he wants to do, if he wants to take advice from jailhouse lawyers, that's his prerogative. Not a good -- I don't think a very good idea, but that's my opinion. He can make any judgment he wants, and we'll go from there, okay? What time is that Wednesday?
>
> THE CLERK: At 10:30.
>
> THE COURT: At 10:30? All right. We'll see you at 10:30 next Wednesday.
>
> [AUSA] COOPER: Thank you, Judge.
>
> MR. PARKER: Thank you, Judge.
>
> THE COURT: Thank you.
>
> THE DEFENDANT: Thank you, Your Honor.

*Id.*, pp. 7-8.

On Wednesday, August 9, 2023, the parties appeared before this Court for the scheduled status  conference regarding the plea.  23-CR-70-A, *Dkt. Entry dated 8/9/23*.  At that time, the Court was advised that Jones did not wish to enter a plea, and as a result, this Court remanded the case to the Magistrate Judge.  *Id.*  Within days, the parties contacted the Court and advised that they had, in fact, reached a

4

plea agreement, and consequently, a waiver and plea proceeding was scheduled. 23-CR-70-A, *Dkt. Entry dated 8/11/23*.

### The Plea Agreement and Plea Colloquy

On August 15, 2023, Jones, represented by attorney Parker, appeared before this Court, and waived indictment (Dkt. 69) and pleaded guilty, pursuant to a written plea agreement (Dkt. 71), to a two-count Information charging him: in Count 1, with conspiracy to possess with intent to distribute 50 grams or more of a mixture or substance containing methamphetamine, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(B); and in Count 2, with being a felon-in-possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1). Dkt. 70.

The parties' plea agreement, *inter alia,* set forth in writing: the maximum penalties Jones faced under each count (Dkt. 71, ¶1); the elements that the government would be required to prove beyond a reasonable doubt under each count in order to establish Jones' guilt (*id*., ¶3); the factual basis for his plea of guilty to each count (*id*., ¶4), including admissions regarding his accompanying a codefendant on a trip from Pennsylvania to Ohio for the purpose of purchasing approximately one pound of methamphetamine  for redistribution (*id*., ¶4(c) and his knowing possession, following a prior felony conviction, of a specific 9mm handgun (*id*., ¶4(f) and 4(g); as well as an appeal waiver in which Jones agreed to "waive[] the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less that a sentence of imprisonment of 84 to 105 months." *Id*., ¶22.  The

signatures of both Jones and his attorney appeared on the agreement immediately after the following affirmation:

> I have read this agreement, which consists of pages 1 through 13. I have had a full opportunity to discuss this agreement with my attorney, Brian Parker, Esq. I agree that it represents the total agreement reached between me and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my pleas of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

*Id.*, p. 13.

Prior to accepting Jones' pleas of guilty, this Court engaged Jones in an extensive 80-minute plea colloquy. Dkt. 123. After placing Jones under oath, the Court began the plea proceeding with the following:

> THE COURT: Mr. Jones, you're now under oath, sir. And being under oath during the course of these proceedings, I'll be asking you a number of questions. You'll have to answer those questions honestly and truthfully. If you were to give me any false answer, that false answer may be used against you in a further prosecution brought by the government on a charge of perjury or making a false statement while under oath. Do you understand that, sir?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: It's also very important you understand what your rights are. If at any time during the course of these proceedings there's something you do not understand, you want to ask me a question, you want to consult with your attorney, you're free to do so. You're encouraged to do so. It is not important that we get this over with as quickly as possible. What's important is that I'm satisfied that you fully understand what your rights are. Do you understand that, sir?
>
> THE DEFENDANT: Yes, sir.

Dkt. 123, pp. 2-3.    After eliciting from both Jones and his attorney, Jones'
understanding of the charges against him, *id.*, pp. 5-6, the following colloquy took
place:

> THE COURT: And you explained to him his rights as far as the waiver of
> indictment?
>
> MR. PARKER: I have, Judge, yes.
>
> THE COURT: And the terms and conditions of the plea agreement?
>
> MR. PARKER: Yes.
>
> THE COURT: And his rights under Rule 11, right to a trial, et cetera?
>
> MR. PARKER: Correct, yes.
>
> THE COURT: Now, Mr. Jones, you've discussed this whole matter with
> your attorney. He's explained to you what your legal rights are, what your
> legal options are. You probably didn't like to hear what he had to tell you,
> but he's not there to make you feel good. He's there to be your attorney.
> And based on those discussions, you're here today to waive certain
> rights and to  plead guilty to these two charges under the terms and
> conditions of the plea agreement.  Are you fully satisfied with the advice
> and counsel you received from Mr. Parker?
>
> THE DEFENDANT: I understand similar what he's said. I have a learning
> disability, so it takes me time to register, but I understand what he said,
> Your Honor.
>
> THE COURT: Are you satisfied with his representation?
>
> THE DEFENDANT: I had no choice. Yes, Your Honor.
>
> THE COURT: You do have a choice. You have a choice to go to trial.
>
> THE DEFENDANT: I'm satisfied, Your Honor.
>
> THE COURT: Any complaints about his representation?
>
> THE DEFENDANT: No, Your Honor.

*Id.*, pp. 6-7.

After discussing Jones' education, background, and health, the Court and Jones' attorney had the following discussion:

> THE COURT: Mr. Parker, your client appears to understand everything I'm saying, does not appear to be under the influence of any drug, medicine, or alcohol. Is that consistent with your observations?
>
> MR. PARKER: It is, Judge. I don't think I've ever had any difficulty conversing with him or having him understand what I'm explaining to him, and I don't have any sense that there's an issue this morning.
>
> THE COURT: He seems to understand everything I'm saying. I know there was another prior appearance here where he may have received some advice from another attorney. But apparently, that may or may not have happened, I don't know. Has anything changed since then?
>
> MR. PARKER: No. Just -- other than we've had further time for my client to review the plea, and I think better come to understand the terms of it.
>
> THE COURT: Okay. You've gone over the plea agreement with him?
>
> MR. PARKER: Yes.
>
> THE COURT: And you're satisfied he understands it?
>
> MR. PARKER: I am.
>
> THE COURT: And you explained to him his rights as far as the waiver of indictment?
>
> MR. PARKER: I did.

*Id.*, pp. 10-11.  After explaining the grand jury process to Jones and securing from him assurance that he understood such process and his right to be charged by way of indictment, the following exchange took place:

> THE COURT: Okay. And if they vote that there be an indictment, then you're brought to court and then we proceed from that point forward. Now, these are rights that you have. Now, you're giving up those rights if you're doing this voluntarily of your own free will. Do you understand that, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is anyone forcing you to give up these rights?

THE DEFENDANT: I feel like it, Your Honor.

THE COURT: You feel like someone is forcing you to do this?

THE DEFENDANT: In a certain way, yes.

THE COURT: Well, I can't go any further, Mr. Cooper.

[AUSA] COOPER: Judge, respectfully, will we able to inquire a little bit more of the defendant? I think his attorney is speaking with him now off the record. Maybe if the Court could follow up in a moment, after they've had a chance to speak, we can clarify what he means by that.

THE COURT: All right. We'll take a five-minute break.

[AUSA] COOPER: Thank you, Judge.

THE CLERK: All rise.

(*A recess was taken from 10:21 a.m. to 10:35 a.m.*)

THE COURT: Mr. Parker, are we ready?

MR. PARKER: We are, Your Honor, yes.

THE COURT: All right. I think I left off with asking Mr. Jones whether anyone was forcing him to plead guilty, and he says he had no choice.

MR. PARKER: Judge, I think my client has a – what he meant was, in his mind, he didn't -- he felt conflicted, perhaps, but nobody is forcing him. I think anybody in his position -- people don't normally come in here happy to take a plea and end up going off to serve a federal sentence no matter how good the numbers might be, but I think he understands that that's his decision based on what the other choices were.

THE COURT: Mr. Jones, has anyone forced you to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Did anyone threaten you in any way?

THE DEFENDANT: No, Your Honor.

THE COURT: You thought this through and this is the way you want to proceed?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Let me ask you this. This is an information. If this matter were presented to a Grand Jury for their consideration, would they be voting on whether there should be other charges other than these two charges?

[AUSA] COOPER: Yes, Your Honor. The Grand Jury would be considering charges involving a (b)(1)(A) amount of methamphetamine, which is a more serious charge that carries a ten-year mandatory minimum. And the Grand Jury would also be considering charges for a violation of 18 United States Code Section 924(c), which carries a five-year mandatory minimum to be served consecutively to any other sentence in the matter. So these are reduced charges contained in the information compared to what would be in a potential indictment.

THE COURT: Now, I don't want to get involved in any plea discussions, that's not my role and I am prohibited from doing that, but I just want to make sure that we're all on the same page here. Mr. Parker, did you discuss this with your client? I don't want to get involved in any privileged communications, but I just want to make sure that I understand that he is aware of all the matters if he were to go to trial. We would be under an indictment, I assume, and there would be other charges.

[AUSA] COOPER: That's accurate, Judge.

MR. PARKER: Judge, I certainly did explain to Mr. Jones that if we were in a post-indictment situation, the charges would be more severe, we would anticipate, and the numbers he would be facing would be likely far greater than what's contained in the plea agreement. And we also discussed what options we would have as far as possible defenses at trial.

THE COURT: Mr. Jones, you're doing this voluntarily. Do you understand that? Or are you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: No question about this?

THE DEFENDANT: Yes, Your Honor.

THE COURT: No one is forcing you to do this?

THE DEFENDANT: No, Your Honor.

*Id*., pp. 15-18.   With regard to the Waiver of Indictment, Dkt. 69, the discussion continued:

THE COURT: Mr. Jones, you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: This is the way you wish to proceed?

THE DEFENDANT: Yes, Your Honor.

THE COURT: No question about that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I assume that means, yes, you want to proceed by filing this information?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you both satisfied that he's doing this voluntarily of his own free will and he's not being forced to do this?

[AUSA] COOPER: The government is satisfied with the additional colloquy that the Court has undergone, as well as the government is very well aware of the number of conversations that Mr. Parker has had with his client about this plea. So the government is satisfied, Judge.

THE COURT: Mr. Parker?

MR. PARKER: Judge, I am satisfied as well.

THE COURT: All right. Well, I am satisfied that it's a knowing and voluntarily waiver. It will be accepted by the Court and direct the Clerk of the Court to file the information as well as the waiver and, with that, let's proceed to the plea agreement.

Dkt. 123, pp. 19-20.

After accepting the waiver and information, the Court then went through each provision of the parties' written plea agreement and had Jones affirm his understanding of the same. *Id.*, pp. 20-50. Specifically, Jones affirmed his understanding of: (1) the maximum penalty he faced, *id.*, pp. 19-23; (2) the elements of the crimes to which he was pleading guilty, *id.*, pp. 23-24; (3) the extensive factual basis supporting such plea including the evidence that the Government would present at trial, *id.*, pp. 24-29; (4) the Sentencing Guidelines and their application to Jones' case, *id.*, pp. 29-37; (5) his appeal rights, including his appellate waiver, *id.*, pp. 38-40; and (6) the forfeiture provisions, *id.*, pp. 40-42. After reviewing the terms and conditions of the plea agreement, the Court further engaged Jones:

> THE COURT: Are these all the terms and conditions of the plea agreement which we read here in court?
>
> THE DEFENDANT: Say that one more time, please, Your Honor.
>
> THE COURT: Are these all the terms and conditions of the plea agreement which we just read here in court? Has anyone made any other promises to you?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: All right. Is anyone forcing you to plead guilty?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Anyone threaten you in any way?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Your willingness to plead guilty, Mr. Parker talked to Mr. Cooper, there was discussions. Your lawyer explained to you what -- the terms and conditions of the plea agreement. And based on those discussions, that's how this all came about. Is that true?
>
> THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, do you understand the offenses to which you were pleading guilty to are series offenses, that if accepted by the Court, you'll be found guilty, and there will be no appeal, as long as the sentence is consistent with the terms and conditions of the plea agreement. If, for some reason, the Court were to impose a higher sentence, and you would obviously disagree with that, you'd have a right to appeal that to a higher court. Do you understand that, sir?

THE DEFENDANT: Yes, Your Honor.

(*Id.*, pp. 41-42).

Finally, the Court confirmed Jones' understanding of all of his trial rights, including; his right to plead not guilty and to persist in such plea; his right to a jury trial; his right to be represented by counsel; his right to hear and to see all the witnesses against him; his right to cross-examine witnesses; his right to put on a defense, subpoena witnesses and records; his right to testify; his presumption of innocence; and the necessity that his guilt be established beyond a reasonable doubt. *Id*. pp. 43-45.

After assuring Jones' understanding of all the foregoing, the colloquy concluded:

THE COURT: You're doing this voluntarily, of your own free will, you understand all the possible consequences?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Any questions, sir?

THE DEFENDANT: No, Your Honor.

THE COURT: Counsel, do you know any reason why I should not accept the plea?

MR. COOPER: No, Your Honor.

MR. PARKER: No, Your Honor.

THE COURT: You're both satisfied I've complied all the requirements of Rule 11?

MR. COOPER: Yes, Your Honor.

MR. PARKER: Yes, Your Honor.

THE COURT: All right. Mr. Jones, how do you plead to Count 1?

THE DEFENDANT: Guilty, Your Honor.

THE COURT: And how do you plead to Count 2?

THE DEFENDANT: Guilty, Your Honor.

*Id*., p. 45.

### The Sentencing

On November 22, 2023, the Court sentenced Jones principally to a term of imprisonment on 84-months on each count of conviction, with the sentences to run concurrently.  Dkt. 101.  Judgment was entered on January 10, 2024. Dkt. 91.  No appeal was filed.

On November 25, 2024, Jones filed the instant *pro se* §2255 motion. Dkt. 105. On February 26, 2025, the Government filed a motion to dismiss Jones' §2255 motion. Dkt. 124.  Jones replied. Dkt. 128.

### II.    ANALYSIS

At the outset, this Court observes that collateral relief, such as that sought by Jones, is available only for a constitutional error "that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v.*

*Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).  As the Second Circuit has explained, "[t]he reasons for narrowly limiting the relief permitted under § 2255 – a respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place – are 'well known and basic to our adversary system of justice.'" *Bokun*, 73 F.3d at 12 (quoting *United States v. Addonizio*, 442 U.S. 178, 184 (1979)).

Moreover, where, as here, a defendant pleads guilty pursuant to a written plea agreement with the government, such "defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable." *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016). Such waivers must be enforced because, if they are not, "the covenant ... becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants." *United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995).

The exceptions to the presumption of enforceability of appeal waivers "occupy a very circumscribed area of our jurisprudence." *United States v. Borden*, 16 F.4th 351, 354–55 (2d Cir. 2021) (internal quotation marks omitted).

> We have recognized only five circumstances where we will not enforce a waiver: (1) where the waiver was not made knowingly, voluntarily, and competently; (2) where the sentence was based on constitutionally impermissible factors, such as ethnic, racial, or other prohibited biases; (3) where the government breached the agreement containing the waiver; (4) where the district court failed to enunciate any rationale for the defendant's sentence, and (5) where the waiver was unsupported by consideration.

*Cook v. United States*, 84 F.4th 118, 122 (2d Cir. 2023)(citations and quotations omitted).  An ineffective assistance of counsel claim "challenging 'the constitutionality of the process by which he waived [his right to appeal]' " is one way a petitioner can demonstrate that his plea was involuntary and uninformed. See *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (*per curiam*) (alteration in original) (quoting *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001)). Pursuant to the two-prong test enunciated by the Supreme Court in *Strickland*, to establish ineffective assistance of counsel, Jones must prove that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,*  466 U.S. 668, 688, 694 (1984).

Here, Jones is proceeding *pro se*, and thus, the Court will construe all his pending motions liberally, interpreting them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*) (citation omitted); *Donaldson v. United States*, No. 09-CR-321A, 2018 WL 703102, at *2 (W.D.N.Y. Feb. 5, 2018).  But, as the moving party, Jones still bears the burden of proving his claims by a preponderance of the evidence. *Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000), and as the Second Circuit has explained, "[a]iry generalities, conclusory assertions[,] and hearsay statements will not suffice" to meet this standard. *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987). Nor is a court required to credit factual assertions that are "contradicted by

the record in the underlying proceeding." *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009).

Viewed in the light most favorable to him, Jones' motion seeks to avoid the waiver provisions of his plea agreement and vacate his sentence on Count 2, the gun count, based upon his conclusory assertion that his lawyer: (1) "failed to advise [him] of his rights" (Dkt. 105, p. 3); and (2) gave him "bad advise [sic]" regarding a potential defense to the gun possession charge—including insufficient proof of his knowledge or possession of the gun such that it rendered his plea to such charge involuntary and unknowing. (Dkt. 105, p. 4; Dkt. 128, p. 1). Both claims lack merit.

Statements at a plea allocution "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). "[U]nsupported allegations which merely contradict [a defendant's] earlier statements made under oath at his plea allocution" do not provide sufficient grounds for withdrawal of a guilty plea as involuntary. *United States v. Gonzalez*, 970 F.2d 1095, 1100–01 (2d Cir.1992); *see also United States v. Torres*, 129 F.3d 710, 715 (2d Cir.1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw [a] guilty plea.").

Here, as demonstrated by the thorough plea colloquy conducted by the Court, Jones' bald assertion that his lawyer failed to advise him of his rights, rings hollow. Following this Court's refusal to proceed with the plea proceeding on August 4th and attorney Parker advising that the Court on August 9th that Jones was not interested in taking a plea, Jones had a change of heart and expressed a desire to enter a plea

of guilty.  This Court scheduled the case for a waiver and plea proceeding to be held on August 15th.  In conducting such proceeding, this Court, based upon its own involvement in the prior proceedings, was well-aware of the history of Jones vacillating on whether he wanted to resolve the charges against him by way of a pre-indictment plea.  For that reason, the Court took great care in engaging in the extensive colloquy with him during the plea proceeding. In fact, when Jones expressed that he "[i]n a certain way" felt that he was being forced to plead guilty, the Court indicated that it could not go any further.  Following a recess, Jones expressly denied being forced or threatened, but as his attorney explained, he was simply conflicted about having to choose between two less-than-attractive choices. Dkt. 123, pp. 15-17.   Given Jones' statements under oath at that change of plea proceeding, and the presumption that those statements were true, his current claims are simply not credible.  Indeed, even assuming for the sake of argument that Jones' attorney, as Jones alleges in his petition, "failed to advise me of my rights," Dkt. 105, p.3, any error in his attorney advising him of his rights was cured by the Court's clear, extensive, and comprehensive plea allocution.  See, *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992);  *Chapman v. United States*, No. 18-CR-55-LJV, 2024 WL 867104, at *6 (W.D.N.Y. Feb. 29, 2024) (petitioner's claim that he was "misadvised" was "cured by the Court's thorough questioning of [him] throughout the plea allocution.").  Jones unquestionably understood his right to plead not guilty and to insist upon a trial as he had previously exercised those very rights in his prior appearances before this Court.

Further, Jones, in an apparent effort to avoid the appellate waiver provisions of his plea, next argues that his attorney was ineffective at the plea negotiation stage because counsel failed to challenge the sufficiency of the evidence to support his knowing possession of the gun which gave rise to the charge set forth in Count 2 of the Information.   Even if Jones recasting what is essentially a sufficiency of the evidence argument as an ineffective assistance claim allows him to evade the procedural hurdles that both the waiver provision in his plea agreement and his failure to raise the issue by way of direct appeal present, such claim fails on the merits.  As described above, the facts admitted to by Jones both in his written plea agreement and under oath during his plea allocution (as well as those facts proffered by the government at the plea proceeding and included in the presentence investigation report) were more than sufficient to establish his knowing possession of the firearm. A defense attorney's decision "to forgo an unsupported argument" does not constitute the ineffective assistance of counsel, *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000), since "[c]ounsel certainly is not required to engage in the filing of futile or frivolous motions." *United States v. Nersesian*, 824 F.2d 1294, 1322 (2d Cir. 1987).

Moreover, "[d]efendant's initial equivocation does not undermine his subsequent admissions or the factual basis for his plea. Although a defendant's flat denial of a material element may undercut the factual basis for a guilty plea, minor equivocation followed by tepid but unambiguous admissions does not."  *Mitchell v. United States*, No. 11-CR-6019-FPG, 2020 WL 587883, at *4 (W.D.N.Y. Feb. 6,

2020).  The evidence here was more than sufficient to establish Jones' knowing possession of the firearm which provided the basis for Count 2.

Even assuming arguendo that Jones' could satisfy the first *Strickland* prong, *i.e.*, that his attorney was somehow ineffective, he cannot show prejudice. He does not proffer any sworn statement that he would have insisted on going to trial if Attorney Parker had challenged various elements of the crimes to which he ultimately pled. Nor does he offer objective evidence to support such a claim. *Mitchell*, 2020 WL 587883, at *7.[2]

Finally, the 84-month sentences which the Court imposed under each count of conviction were ordered to run concurrent to one another.  Consequently, to the extent that Jones, in his motion, asks this Court to "dismiss Count 2" and to "cut" his "time" "in accordance to law," the Court observes that even assuming Jones could establish counsel's ineffectiveness under Count 2, he is not entitled to any relief since he cannot establish that his sentence would be reduced. See, *Kassir v. United States*, 3 F.4th 556, 561 (2d Cir. 2021)(the so-called "concurrent sentence doctrine " allows courts, in their discretion, to avoid reaching the merits of a §2255 claim in the presence of identical concurrent sentences where "a ruling in the defendant's favor

---

[2] To the contrary, as set forth in the factual recitation above, the record demonstrates that that in negotiating the plea agreement that he did—whereby Jones was permitted to plead to a 18 U.S.C. §922(g) charge, as opposed to the original 18 U.S.C. §924(c) charge which was originally lodged against him—Parker saved Jones from a potential mandatory 60-month sentence which would have had to been imposed consecutive to any sentence imposed on his drug conviction.

would not reduce the time he is required to serve or otherwise prejudice him in any way."). That is the case here, and consequently, Jones is not entitled to relief.

## III.    CONCLUSION

For the reasons set forth above, Jones' §2255 motion (Dkt. 105) is **DENIED**, and the Government's motion (Dkt 124) to dismiss such §2255 motion is **GRANTED**. Further, pursuant to 28 U.S.C. § 2253(c)(1) and Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court declines to issue a certificate of appealability because Jones has not made a substantial showing of the denial of a constitutional right. Finally, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal taken from this decision would not be taken in good faith. Thus, leave to appeal *in forma pauperis* is denied. Jones is advised that "Federal Rule of Appellate Procedure 4(a) governs the time to appeal," and "[a] timely notice of appeal must be filed even though the Court declined to issue a certificate of appealability. Rule 11(b) of the Rules Governing Section 2255 Proceedings.

**IT IS SO ORDERED.**

*s/Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
SENIOR U.S. DISTRICT JUDGE

Dated:  May 14, 2025
        Buffalo, New York.